## COMMISSIONER OF INTERNAL REVENUE v. AMERICAN SEATING CO.

### No. 4257.

Circuit Court of Appeals, Seventh Circuit.

June 27, 1931.

G. A. Youngquist, Asst. Atty. Gen., and J. Louis Monarch and Andrew D. Sharpe, Sp. Assts. to Atty. Gen. (C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, and Allin H. Pierce, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., of counsel), for petitioner.

Laurence Graves, of Washington, D. C., for respondent.

Before ALSCHULER, EVANS, and SPARKS, Circuit Judges.

ALSCHULER, Circuit Judge.

The Commissioner of Internal Revenue brings this proceeding, wherein he complains of the action of the Board of Tax Appeals in determining the deficiency in respondent's federal income and profits taxes for the year 1921 at $9,117.03, instead of $21,467.50 as determined by the Commissioner. The difference arises out of the amount of taxpayer's invested capital for that year, the Commissioner denying the propriety of several items which taxpayer claimed, and which the board allowed, as taxpayer's invested capital.

The Board found as facts (14 B. T. A. 328) that since 1906 taxpayer had been in the business of manufacturing and selling desks and seats for schools and other places of public assembly; that the framework of their product had been made of cast iron, and that in about 1909 taxpayer concluded it was advisable to substitute steel for cast iron, and in 1910 began work to this end, incurring expense in changing equipment and in experimentation of $55,296.55 in 1911 and $110,180.05 in 1912, all of which it then charged to its capital investment account; that in 1915 taxpayer purchased for $25,000 certain inventions deemed necessary in the successful production of the steel parts of its products, which amount was likewise charged to invested capital; that its first contract for its steel product was with the St. Louis school board, to which it shipped a large consignment of school equipment, which after installation proved so defective that it was returned to taxpayer and replaced at loss to taxpayer of $33,239.77, and this loss it also then charged to invested capital.

The Commissioner allowed as invested capital a portion of the expense items of 1911 and 1912, but disallowed the items of purchase of inventions, and of loss on defective St. Louis equipment. The Board allowed further so much of the 1911 and 1912 expense items as the Commissioner had disallowed, and allowed also the items of invention purchase and St. Louis contract loss.

■ Respecting the 1911 and 1912 expense items, we perceive no substantial objection to their inclusion in invested capital. It was deemed advisable to substitute steel for cast iron, which involved a new venture, at least for this concern. The innovation evidently required very substantial structural changes, which in turn involved engineering assistance and experimental operations before ultimate success was achieved. The cost as reported by taxpayer does not appear to be challenged, nor its good faith in including this in its invested capital. In such matters no inflexible rule can be laid down for determining how much of the cost of experimenting and changing may properly be included in the item of invested capital, and we would not be warranted in setting aside the judgment of the Board respecting what is essentially this question of fact.

■ Respecting the item of loss on the St. Louis contract, we are inclined to the belief that under the facts it should not have been allowed as invested capital. When taxpayer entered into this large contract presumably the experimental stage had been passed. If before making and shipping this large amount of product it was not satisfied that the experimental period had in fact passed, it was at least improvident to make the shipment. If the experimental stage had been passed, the defects in the product shipped would indicate faulty workmanship or materials rather than immaturity in the plan and scheme for perfecting the change from cast iron to steel. In such case loss attributable to defective workmanship or materials would be a business loss for the year in which it occurred, rather than an augmentation of taxpayer's invested capital.

Respecting the item of $25,000 for purchase of inventions, the facts are not so clear as might be desirable to sustain its inclusion in invested capital for the year 1921. If in the prosecution of taxpayer's business it was deemed advisable to purchase these inventions, and they were accordingly purchased in good faith, it is not for the government to substitute its judgment for that of the taxpayer in determining the wisdom thereof.

■ It is not clear that any patents were in fact acquired. If patent grants were acquired, their capital value in 1921 would be substantially less than at the time of acquirement. Patents are issued for seventeen years, and the capital value of investment therein diminishes as the term passes. If the inventions purchased were secret processes which the purchaser might ever after exclusively employ, the price paid therefor might properly be considered continuing invested capital, at least until the process or invention becomes public property. Taxpayer did expend $25,000 therefor, and the Board found that at the time of payment no patents had been granted, or even applied for. There was evidence that taxpayer still uses the invention or process thus acquired, and it is fair to conclude that taxpayer still has the benefit of that investment. In our judgment the Board's conclusion upon this item should remain undisturbed.

For respondent it is contended that there was no evidence before the Board upon which it could redetermine this tax. The question arises thus: The same questions as above considered arose before the Board upon its redetermination of taxpayer's income and profits taxes for the year 1920. In that case the Board first reached the conclusions as announced upon its redetermination of the tax of 1921. 4 B. T. A. 649. Upon the hearing of the instant case before the Board, tax-

 

payer offered in evidence the findings of fact and opinion of the Board as reached upon the 1920 tax. To its admission the Commissioner objected, upon the ground that the finding of the Board upon the tax for 1920 afforded no evidence admissible upon the hearing for determining the tax for 1921, but the Board admitted them.

The situation here is quite peculiar, from the fact that under the law as applicable to the Board's determination of the 1920 tax there was no means provided for judicial review of the Board's findings and conclusions. Then, either party aggrieved by the decision of the board could begin an action in the District Court, where the questions respecting the tax would be heard and determined anew, Revenue Act of 1924, 43 Stat. 253, §§ 274, 279; and, indeed, it happens that as to taxpayer's 1920 tax the Commissioner, after redetermination by the Board, did begin suit in the District Court, which suit is still pending.

In strictness it may be said that the Board's finding upon taxpayer's invested capital in the controversy respecting the 1920 tax does not afford evidence of what taxpayer's invested capital was for the year 1921. The logic of this might be tested by placing a longer period between the two taxes, say, ten years instead of only one. While it is not probable that there was any substantial difference in taxpayer's invested capital between 1920 and 1921, such improbability would not alone rise to the dignity of a definite legal presumption that this was so.

But the situation is not dominated alone by the fact that the issue was the 1921 tax, and the evidence related to the 1920 tax. At the hearing before the Board there was some testimony offered by taxpayer to indicate that the conditions in 1921 were the same as in 1920; and while this evidence was not as full and complete as might be desired, yet, taken in connection with the strong likelihood of no material change, we feel warranted in concluding that the findings of fact on the prior hearing in connection with the evidence of similarity of conditions, and the absence of evidence by either party to the contrary, sufficiently showed the situation as to invested capital for 1921.

One ground of objection by the Commissioner to admitting in evidence the 1920 findings was that the offer was not accompanied by a transcript of the evidence upon which the 1920 findings were based. We must assume that this transcript was equally available to both parties, and either might have offered it. In absence of such offer by either party we may assume that the Board's findings of fact upon the 1920 tax were warranted by the evidence then before the board.

The Commissioner makes the further contention that taxpayer's invested capital for 1921 should be reduced by the amount of its taxes for 1920 of $207,708.50, as determined by the Commissioner, rather than by the amount of $196,407.99, as determined by the Board. To sustain this view the Commissioner contends that, since that question is now pending in the District Court, the Commissioner's determination should be adopted until it is definitely changed. We think the Board was correct in concluding that the prima facie effect of its finding remains until a different conclusion is reached in the manner pointed out by law. We therefore sustain the action of the Board on this proposition.

Our conclusion is that the judgment of the Board be affirmed in all respects save in its inclusion in taxpayer's invested capital of the loss incurred on the St. Louis contract. We hold that this item should be excluded from taxpayer's invested capital, and accordingly the cause is remanded to the Board of Tax Appeals with direction to determine respondent's deficiency for 1921 in accordance with these views.