Frank W. Babcock, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Docket No. 55993.   Filed June 28, 1957.

*Austin Clapp, Esq.*, for the petitioner.
*J. Earl Gardner, Esq.*, for the respondent.

OPINION.

ATKINS, *Judge:* The respondent determined a deficiency in the petitioner's income tax for the calendar year 1949 in the amount of $15,323.09 and an addition thereto under section 293 (a) of the Internal Revenue Code of 1939 in the amount of $992.38. The petitioner challenges only so much of the deficiency and addition as arises out of the respondent's determination that the petitioner realized a recognizable gain as the result of condemnation of real estate, and that the petitioner is not entitled to a deduction for an amount paid as real estate taxes.

The facts have been stipulated in full and are found as stipulated. A summary of the facts will suffice for the purpose of deciding the issues presented.

### 1. Gain on Condemnation Award.

The petitioner timely filed his income tax return for the calendar year 1949 with the collector of internal revenue at Los Angeles, California.

In October 1945 the petitioner purchased real estate known as the Elk Metropole Hotel in Los Angeles at a total cost of $89,600. At the time of purchase he executed a promissory note secured by a purchase money trust deed (sometimes referred to herein as mortgage) covering the land and building in the amount of $70,000. Principal and accrued interest on that note aggregating $57,572.63 remained unpaid on November 9, 1949. Interest paid by the petitioner on the note from October 1, 1945, to November 9, 1949, was claimed and allowed as a deduction from gross income in income tax returns filed during that period.

On November 9, 1949, the State of California, under condemnation proceedings, acquired the Elk Metropole Hotel, pursuant to a formal contract entered into between the petitioner and the State of California, which fixed the selling price at $207,323.34. On or about the same date, and in accordance with the contract,[1] the State of Cali-

---

[1] The contract between the petitioner and the State provided that the State should pay the petitioner, as grantor, $207,323.34 for the property, payment to be made within 90 days after the date title vested in the State free and clear of all liens and encumbrances. However, it was further provided that, upon demand, any or all of the moneys up to and

fornia paid to the mortgagee of the property the sum of $57,572.63 representing the balance due on the trust deed note, and also paid directly to the petitioner the sum of $149,750.71, which payments aggregated the contract price of $207,323.34.

In March 1950 an informal application to establish a replacement fund was made by the petitioner to the respondent. While this was pending, on July 7, 1950, the petitioner purchased the Sherwood Apartment Hotel in Los Angeles as a replacement of the Elk Metropole Hotel. The purchase price of the replacement property was $186,125 of which $149,750.71 was paid in cash by the petitioner from the moneys received from the State of California for the Elk Metropole Hotel property.

In his income tax returns for the years 1945 to 1949, inclusive, the petitioner claimed depreciation deductions in respect of the Elk Metropole Hotel in the aggregate amount of $8,166.66, of which the respondent allowed the amount of $8,000.

In his notice of deficiency the respondent held that since only $186,125 was expended by the petitioner for similar property, whereas the amount of the condemnation award was $207,323.34, gain was recognizable to the extent of the difference of $21,198.34. He treated this as long-term gain and increased the reported taxable income by one-half that amount, or $10,599.17.

The substance of the petitioner's argument against the recognition of any gain arising out of the condemnation award is that his interest in the property and the interest of the mortgagee were several interests, that he sold only his interest, and that the amount he realized for his interest was fully reinvested in similar property; hence under section 112 (f) of the 1939 Code there was no recognizable gain. The computation that he proposes on brief is as follows:

| | |
|---|---:|
| Downpayment | $19,600.00 |
| Payments on principal | 12,427.37 |
| | |
| Cost of interest sold | 32,027.37 |
| Capital returned via depreciation | 8,000.00 |
| | |
| Basis of interest sold | 24,027.37 |
| Gain realized | 125,723.34 |
| | |
| Total realized | 149,750.71 |
| Reinvested | 149,750.71 |
| | |
| Gain recognized | |

including the total amount of the unpaid principal and interest on the note secured by the deed of trust, together with any penalty for payment in full in advance of maturity, should be made payable to the beneficiary under the deed of trust, and that such beneficiary should furnish the grantor (the petitioner) with good and sufficient receipts showing such money credited against the indebtedness secured by the deed of trust.

Section 112 (f) as it existed in 1949 provided as follows:

INVOLUNTARY CONVERSIONS.—If property (as a result of its destruction in whole or in part, theft or seizure, or an exercise of the power of requisition or condemnation, or the threat or imminence thereof) is compulsorily or involuntarily converted into property similar or related in service or use to the property so converted, or into money which is forthwith in good faith, under regulations prescribed by the Commissioner with the approval of the Secretary, expended in the acquisition of other property similar or related in service or use to the property so converted, or in the acquisition of control of a corporation owning such other property, or in the establishment of a replacement fund, no gain or loss shall be recognized. If any part of the money is not so expended, the gain, if any, shall be recognized, but in an amount not in excess of the money which is not so expended.

Section 29.112 (f)–1 of Regulations 111 provides in part as follows:

If, in a condemnation proceeding, the Government retains out of the award sufficient funds to satisfy liens (other than liens due to special assessments levied against the remaining portion of the plot or parcel of real estate affected for benefits accruing in connection with the condemnation) and mortgages against the property and itself pays the same, the amount so retained shall not be deducted from the gross award in determining the amount of the net award. * * *

In *Fortee Properties, Inc.*, 19 T. C. 99, certain properties of the taxpayer were taken by the Port of New York Authority by condemnation under the power of eminent domain. Each of the properties was encumbered by mortgages which had been placed thereon prior to the time the taxpayer had acquired them. The taxpayer had not assumed the liability but had acquired the properties subject to the mortgages. The taxpayer and the Port of New York Authority agreed upon the total value of the properties. The authority paid the amount due on the mortgages directly to the holder and paid the balance to the taxpayer. The taxpayer had no control over the payment or disposition of the amount paid in satisfaction of the mortgages. In that case it was held that the taxpayer, by investing the full amount of money which was paid directly to it, had complied with the provisions of section 112 (f) and that it was not necessary to such compliance that it also expend in the acquisition of similar property an amount equal to the amount which was directly paid by the Port of New York Authority to the holder of the mortgages. It was pointed out that the taxpayer had not borrowed the money secured by the mortgages, did not receive directly, indirectly, or constructively the amount necessary to satisfy the mortgages, and since it was not personally liable for the mortgage indebtedness, did not benefit by the payment of such indebtedness. Certain cases were distinguished on the ground that therein money awarded was used by the Government to pay liens placed upon the property during the time it was owned by the taxpayer or to pay a debt for which the

taxpayer was personally liable. In that case we stated in part, at pages 101–102, 103:

If his [the Commissioner's] regulation is intended to cover a case like this one in which the petitioner was not personally liable for the mortgages, then to that extent the regulation is invalid because it frustrates rather than promotes the intention of Congress.

    \*        \*        \*        \*        \*        \*        \*

The rather clear intention of Congress would be defeated rather than carried out if a part of the petitioner's gain were to be recognized because it did not also expend in the acquisition of similar property the $28,970 which it did not have invested in the condemned property, for the payment of which it was not personally liable, and which it did not receive directly, indirectly, or constructively. \* \* \*

That case was reversed in *Commissioner* v. *Fortee Properties, Inc.*, (C. A. 2, 1954) 211 F. 2d 915, certiorari denied 348 U. S. 826. The Court of Appeals in holding in effect that the taxpayer had not complied with the requirements of section 112 (f), took the view that, within the meaning of that section, the property sold was the full property and not merely the owner's rights over and above encumbrances, and that the payment to the mortgagee, even though liability had not been assumed by the taxpayer, benefited it. In so holding the Court of Appeals relied heavily upon *Crane* v. *Commissioner*, 331 U. S. 1.

In our consideration of the *Fortee* case we gave thorough consideration to the *Crane* case and held that it had no application since it did not involve section 112 (f) of the Code. In the *Crane* case the question presented was how a taxpayer, who acquired depreciable property subject to an unassumed mortgage, held it for a period, and finally sold it, still so encumbered, must compute the taxable gain. We were not concerned with any such question in the *Fortee* case. We were concerned with the question whether the taxpayer had invested in similar property all the money received upon the involuntary conversion of his former property so as to comply with the provisions of section 112 (f). We have given careful consideration to the holding of the Court of Appeals for the Second Circuit in the *Fortee* case, but with all due respect to that court we adhere to the position taken by us in that case.

We have not overlooked the following statement contained in H. Rept. No. 798, 82d Cong., 1st Sess., made in connection with Public Law 251, 82d Cong., Act of Oct. 31, 1951, ch. 661, 65 Stat. 733, 1951–2 C. B. 353, which amended section 112 (f):

A problem also arises under the present law where the taxpayer uses a part of the proceeds from the converted property to pay off indebtedness on the converted property. In such a case the taxpayer is denied the benefits of section 112 (f), that is, the taxpayer must pay a tax on any gain from the converted property up to the amount of the proceeds which are used in liqui-

dation of indebtedness on the converted property, even though he also fully replaces the converted property, since the amount used to pay off the indebtedness cannot be directly traced into the replacement property.

In such a case as the instant case and the *Fortee* case, where an amount is paid to the mortgagee under a mortgage as to which the taxpayer has no personal liability, we think the money so used should not be considered as money received by the taxpayer. Cf. *Kennebec Box & Lumber Co.* v. *Commissioner*, (C. A. 1) 168 F. 2d 646, and *Ovider Realty Co.* v. *Commissioner*, (C. A. 4) 193 F. 2d 266, both affirming decisions of this Court.

There is no essential difference between the instant case and the *Fortee* case. The petitioner, under the condemnation procedure, entered into an agreement with the State of California fixing the amount of the award at $207,323.34, and the State of California directly paid off the mortgage indebtedness out of the $207,323.34. Here, although the mortgage was placed upon the property by the petitioner at the time of purchase, there was no personal liability upon him for payment thereof, the mortgagee having recourse only against the property, in view of sections 580b and 580d of the California Code of Civil Procedure (Cal. Code Civ. Proc. Ann. secs. 580b and 580d (West 1955)),[2] as construed in *Stone* v. *Lobsien*, 112 Cal. App. 2d 750, 247 P. 2d 357, and *Mortgage Guarantee Co.* v. *Sampsell*, 51 Cal. App. 2d 180, 124 P. 2d 353.[3]

---

[2] Sec. 580b. **Purchase money mortgages, etc.; no deficiency judgment**

No deficiency judgment shall lie in any event after any sale of real property for failure of the purchaser to complete his contract of sale, or under a deed of trust, or mortgage, given to secure payment of the balance of the purchase price of real property.

Where both a chattel mortgage and a deed of trust or mortgage have been given to secure payment of the balance of the combined purchase price of both real and personal property, no deficiency judgment shall lie at any time under any one thereof. * * *

Sec. 580d. **Foreclosure under power of sale; no deficiency judgment; exceptions**

No judgment shall be rendered for any deficiency upon a note secured by a deed of trust or mortgage upon real property hereafter executed in any case in which the real property has been sold by the mortgagee or trustee under power of sale contained in such mortgage or deed of trust.

The provisions of this section shall not apply to any deed of trust, mortgage or other lien given to secure the payment of bonds or other evidences of indebtedness authorized or permitted to be issued by the Commissioner of Corporations, or which is made by a public utility subject to the provisions of the Public Utilities Act. * * *

[3] In *Stone* v. *Lobsien* it was stated:

This was a purchase money deed of trust, and, in this state, there is no personal liability imposed on the vendee of a purchase money deed of trust. In the event of a default, no deficiency judgment could have been taken against appellant. § 580b, Code Civ. Proc.; * * *

In *Mortgage Guarantee Co.* v. *Sampsell* it was stated:

Section 580b, which is the section upon which appellant relies in this case, states, in effect, that there can be no deficiency judgment at all where property is sold under a purchase money mortgage or deed of trust. In other words, for a purchase money mortgage or deed of trust the security alone can be looked to for recovery of the debt. * * *

We accordingly hold that the respondent erred in treating any part of the condemnation award as a recognizable gain.

### 2. Deductibility of Real Estate Taxes.

On or about February 14, 1949, the petitioner entered into an escrow agreement for the purchase of certain real property in block 38, Hancock's Survey in the City and County of Los Angeles, California. On the first Monday in March 1949 taxes were assessed in the name of the record owner, Fridi Seeber, against the property by the authorities of Los Angeles County. The terms of the escrow agreement were satisfied and settlement was made by the parties on April 4, 1949. In December 1949 the petitioner paid taxes in the amount of $862.30 which had been assessed against the property on the first Monday in March 1949 while in escrow. The petitioner in his income tax return for the calendar year 1949 claimed a deduction for such payment of $862.30. The respondent disallowed the deduction on the ground that these taxes were imposed upon the seller and that the payment by the petitioner constituted a capital expenditure.

In *Magruder* v. *Supplee*, 316 U. S. 394, the Supreme Court, in deciding whether a vendee of real property was entitled to deduct State and city real property taxes stated, at pages 398 and 399:

A tax lien is an encumbrance upon the land, and payment, subsequent to purchase, to discharge a pre-existing lien is no more the payment of a tax in any proper sense of the word than is a payment to discharge any other encumbrance, for instance a mortgage. * * *

* * * * * * *

Thus, either a pre-existing tax lien or personal liability for the taxes on the part of a vendor is sufficient to foreclose a subsequent purchaser, who pays the amount necessary to discharge the tax liability, from deducting such payment as a "tax paid." * * *

That case also establishes that, in ascertaining the existence of either a personal liability for the tax on the part of a vendor or the existence of a lien prior to the time of purchase thereof, resort must be had to the law of the taxing authority.

The State of California Revenue and Taxation Code (Cal. Code Rev. & Tax. secs. 405, 2187, 2192 (West 1956)) provides in pertinent parts as follows:

Sec. 405. Annual assessment; time

Annually, the assessor shall assess all the taxable property in his county, except State assessed property, to the persons owning, claiming, possessing, or controlling it at 12 o'clock meridian of the first Monday in March. The assessor shall ascertain such property between the first Mondays in March and July. * * *

Sec. 2187. Tax on real estate; lien

Every tax on real property is a lien against the property assessed. * * *

### Sec. 2192.  Lien date

All tax liens attach annually as of noon on the first Monday in March preceding the fiscal year for which the taxes are levied. * * *

In view of these provisions of the statute it seems clear that the property taxes in question are those for the State's fiscal year ended June 30, 1950, but that a lien on account thereof attached to the property as of the first Monday in March 1949. At that time the conditions of the escrow agreement had not been met and title to the property had not passed to the petitioner.

The petitioner first contends that the equitable owner of the property is personally liable for the tax and may be assessed for it, relying upon the case of *First Trust & Savings Bank of Pasadena* v. *Los Angeles County*, 206 Cal. 240, 273 Pac. 1066. The petitioner has cited no case, nor has any come to our attention, under which it could be considered that the petitioner obtained an equitable title to the property under the escrow agreement. Insofar as we can determine, neither equitable nor legal title passed from the original owner prior to the settlement on April 4, 1949.

The petitioner also contends that he should be considered as claiming and controlling the property on the first Monday in March 1949 within the meaning of section 405 of the Revenue and Taxation Code quoted above. He has cited us no authority to support this contention and we have been unable to find any. Normally an escrow agreement, as we understand it, does not give the vendee control over the property or a claim to it prior to the satisfaction of the terms of the escrow.

We have held that under the laws of California the liability for property taxes is determined by the ownership of the property on the first Monday in March. *California Sanitary Co., Ltd.*, 32 B. T. A. 122, *Crown Zellerbach Corporation*, 43 B. T. A. 541, *Pacific Southwest Realty Co.*, 45 B. T. A. 426, affirmed on other issues (C. A. 9) 128 F. 2d 815.

Here we think the petitioner was not, on the first Monday of March 1949, the person owning, claiming, possessing, or controlling the property within the meaning of the California statute and that hence the taxes were not imposed upon him. Rather, we believe that when he did become the owner of the property it was impressed with a lien and that his discharge of such lien constituted a capital expenditure in the nature of additional cost of the land to him and that he is not entitled to deduct the amount of $862.30 as taxes paid, under section 23 (c) of the Internal Revenue Code of 1939.

The respondent determined an addition to the tax under section 293 (a) in the amount of $992.38. The petitioner does not allege error in the respondent's assertion of the addition, but does question the amount thereof. Section 293 (a) provides:

NEGLIGENCE.—If any part of any deficiency is due to negligence, or intentional disregard of rules and regulations but without intent to defraud, 5 per centum of the total amount of the deficiency (in addition to such deficiency) shall be assessed, collected, and paid in the same manner as if it were a deficiency, * * *

The proper amount of the addition to tax will be fixed pursuant to the computation under Rule 50.

*Decision will be entered under Rule 50.*