LittletoN, Judge,
delivered the opinion of the court:
This is a suit to recover taxes paid to the United States. The single question concerns the amount of gain which the taxpayer is required to recognize upon involuntary conversion of his business property under section 112 (f) of the Internal Revenue Code of 1939 [1].
The facts have been stipulated. Plaintiff, a New York corporation, from the date of its organization in 1943, was principally engaged in the operation of a garage in New York City. Plaintiff acquired its garage property (the property with which the present controversy is concerned) in 1944. The property was then subject to a mortgage indebtedness of $90,000 and plaintiff paid $21,415.80 in cash *270 thus giving the property a total initial basis of $111,415.80 [2]. Plaintiff did not assume the mortgage indebtedness.
In 1948, pursuant to state law, plaintiff’s property was condemned and a final award of $225,000 was made therefor. Of this amount $88,360 was paid directly to the mortgagee thereby extinguishing the entire mortgage indebtedness outstanding at the time of the condemnation. The balance of the award, $136,640, was paid to the plaintiff. Direct payment to the mortgagee was, under the circumstances, mandatory under state law. The adjusted basis of the property at the time of the award was $102,409.67.
Thereafter plaintiff acquired new garage property, similar to that condemned, at a cost of $203,250.
There is no controversy as to plaintiff’s qualifications for relief under section 112 (f) except as to the amount of the relief to which it is entitled. Concededly, plaintiff’s property was involuntarily converted into money winch was forthwith in good faith expended in the acquisition of other property similar in service to the property so converted. Likewise, both parties agree that, as a result of the condemnation award, plaintiff realized a long-term capital gain of $116,375.95.[3] Neither is there any question that plaintiff expended $203,250 in acquiring its new facilities, nor does the Government contend that these facilities are worth any less than the sum paid therefor. The entire controversy concerns the amount which plaintiff must recognize of the gain which admittedly was realized.
It is the Government’s position that since plaintiff actually received only $136,640 from the condemnation of its property, it is limited to that amount in determining the amount which it “expended” in the acquisition of similar property; that since the mortgage indebtedness was paid directly to the mortgagee, plaintiff could not have, in reality, and therefore cannot be considered to have, “expended” any part of that *271 sum in the acquisition of similar property; that since plaintiff can trace no more than the amount it actually received as its share of the condemnation award into the similar property, the relief provided by section 112 (f) is limited to the amount which can be literally traced into the similar property.[4]
Plaintiff does not contend that no part of the gain it realized should be recognized at this time, but it does insist that the amount of recognition should be limited to the difference between the amount it actually expended in the acquisition of its similar facilities and the total amount of the award. In the present case, that difference would be $219,396.81[5] less $203,250, equaling $16,146.81. Plaintiff argues that it is only required to recognize this latter sum at the present time under § 112 (f). We agree.
The decision of the Supreme Court in Crane v. Commissioner, 331 U. S. 1 (1947) and that of the Second Circuit in Commissioner v. Fortee Properties, 211 F. 2d 915 (1954) are of particular significance to the present case.
In Creme, the taxpayer who had acquired property subject to an unassumed mortgage urged that the basis of such property both for purposes of depreciation and computation of. gain should be merely the equity of the taxpayer therein, that is, the difference between the fair market value of the property and the indebtedness on the property. The Supreme Court rejected this argument and held that the basis of such property was properly the fair market value thereof, including both the taxpayer’s equity therein and the amount of the unassumed mortgage. It then went on to hold that, as a logical consequence, where such property is sold, the sum paid to the mortgagee constitutes an “amount received” by the taxpayer for purposes of computing his gain under § 111 (b) of the Code.
In Fortee, an argument was made by the taxpayer similar to that made in Crane, but this time under § 112 (f) with which we are presently concerned. In the Fortee case, the *272 taxpayer had an equity in his property and the property was subject to an unassumed mortgage. Upon involuntary liquidation of his property the taxpayer received a sum equal to his equity which he forthwith expended in the acquisition of similar facilities, thus postponing recognition of his gain to the extent of the amount so expended pursuant to § 112 (f). He then argued that the additional amount of the condemnation award which was paid directly to the mortgagee should not be considered as “received” by him or taxed as gain. The Second Circuit rejected this argument, following Grane, and held that the amount paid to the mortgagee was “received” by the taxpayer and subject to tax as gain to him.
In the present case, the taxpayer has adopted the rules of Grane and Fortee and concedes that the amount paid directly to the mortgagee is to be considered as “received” by him. He goes one step further, however, and urges that to the extent he actually spends money (derived from a source other than the condemnation award) equal to the sum which is considered “received” by him, then such amount should also be considered “expended” by him in the acquisition of similar facilities within the meaning of § 112 (f). We think the taxpayer’s argument is a correct, logical and just extension of the Grane and Fortee cases.
As the Tax Court noted in Massillon-Cleveland-Akron Sign Co., 15 T. C. 79, 83 (1950):
Section 112 (f) is a relief provision, which takes cognizance of the inequity of taxing a gain resulting from the involuntary conversion of property where the proceeds are used to replace the property, and should be liberally construed to effectuate its purpose. Washingington Railway & Electric Co., 40 B. T. A. 1249; Davis Regulator Co., 36 B. T. A. 437; Washington Market Co., 25 B. T. A. 576.
Under the Government’s theory of the instant case, despite the relief which Congress intended, the taxpayer will have to sustain a substantial burden of taxation though it has not, as a matter of fact, realized any real gain except to the extent that it now has facilities worth less than the amount paid to it for the original facilities. On that gain, as we have indicated, plaintiff admits liability for tax.
*273 In the present case, in order to obtain facilities similar to those condemned, the taxpayer was required to expend a sum considerably in excess of the amount it actually received in cash from the condemnation proceedings, but less than the amount it “received” from those proceedings for purposes of computing gain under Grane and Fortee. To the extent that a sum equal to the amount so “received” is actually spent in the acquisition of similar facilities it should be considered “expended” within the meaning of § 112 (f), for otherwise the relief provisions thereof will be substantially thwarted. There is no merit to the Government’s insistence upon a literal tracing of money into the new facilities at least where, as here, there is no question as to the amount actually expended for those new facilities.
The Government seems to think that plaintiff is going to avoid taxation by this transaction. Of course, § 112 (f) does not provide for tax avoidance, but it does permit tax postponement and that is all the relief which plaintiff seeks or will obtain in this case. This is accomplished by § 113 (a) (9) which provides that, in the present situation, the basis of the new facilities will be that of the old facilities “increased in the amount of gain or decreased in the amount of loss to the taxpayer recognized upon such conversion.” Thus, in the present case, the basis of plaintiff’s newly acquired property will be that of the condemned property, $102,409.67, less $16,146.81 not expended under § 112(f), plus the amount of the gain which plaintiff is presently recognizing, $16,146.81, or a total of $102,409.67. This will he the basis even though the property actually cost and, presumably, is worth $®03$50. It is apparent, therefore, that when and if plaintiff voluntarily disposes of his property, he will be taxed upon a gain computed on the same basis as would have been the case had the property not been involuntarily converted. Meanwhile, plaintiff’s depreciation deduction is limited to the low base figure. Plaintiff will, therefore, avoid no tax, but merely postpone it until such time as the property is disposed of in the usual way. This is the precise relief accorded by § 112 (f).
Accordingly, we hold that plaintiff “expended” $203,250 in the acquisition of similar facilities and is, therefore, *274 presently taxable only on the difference between that figure and the total amount it “received” for the condemned property.
Judgment to this effect will be entered for plaintiff with interest thereon as provided by law with the amount of recovery to be determined pursuant to Rule 88 (c).
It is so ordered.
LaRAMORe, Judge; Madden, Judge; Whitaker, Judge; and Jones, Chief Judge, concur.
FINDINGS OF FACT
The court, having considered the pleadings, the stipulations of the parties, and the briefs and arguments of counsel, makes findings of fact as follows:
1. The plaintiff is a corporation organized and existing under the laws of the State of New York and maintains an office and principal place of business in New York, New York.
2. From the date of its organization on August 19, 1943, plaintiff’s principal business was the operation of a garage located at 342 West 41st Street, New York, New York.
3. Plaintiff acquired the garage property mentioned above in 1944 at which time the property was subject to a mortgage indebtedness of $90,000. Plaintiff paid $21,415.80 for the property but did not assume the mortgage indebtedness.
4. During the years 1944-1948 plaintiff depreciated the building located at 342 West 41st Street at a 3% annual rate applied to a depreciable basis of $74,277.20. Defendant does not dispute the correctness of plaintiff’s allocation of $74,-277.20 to the garage building and $37,138.60 to the land on which the building was situated.
5. In 1947 the Port of New York Authority commenced condemnation proceedings in respect to plaintiff’s garage property and also in respect to other realty adjacent thereto. The condemnation was in connection with the construction of the Port Authority Union Motor Bus Terminal.
6. On April 8, 1949, the Supreme Court of the State of New York issued a final decree of condemnation with respect to plaintiff’s property. The final decree provided as follows:

*275
Damage parcel No, Owners Estimated loss or damage Final award

3 Unencumbered fee fee owner: The Port of New York Authority as assignee of Wala Garage, Inc. mortgagee: The Port of New York Authority as assignee of the Seamen’s Bank for Savings in the city of New York: Proved claim for separate award in the amount of $88,360. $225,000AA $225,000AA
7. $88,360 of the total condemnation award was paid directly to the Seamen’s Bank for Savings in full satisfaction of the mortgage that it held on plaintiff’s garage property. Plaintiff was paid the remaining $136,640.
8. In connection with the condemnation proceedings plaintiff incurred expenses of $6,214.38.
Plaintiff realized a gain of $116,375.95 on the condemnation of its property. This figure is arrived at by deducting the property’s adjusted basis of $102,409.67 from the gross condemnation award of $225,000, less the $6,214.38 expenses incurred by plaintiff in connection with the condemnation proceedings.
9. The closing statement relative to the transaction involving the condemnation of plaintiff’s garage property was as follows:
UNION MOTOR BUS TERMINAL
Wala Gabage, Ino.

Closing Statement

Address of Property: 342 West 41st Street,
Borough of Manhattan,
New York City
Damage Parcel 3
Date of Closing: January 15, 1948
Amount of award — land and building-$225, 000.00
Mortgage — direct payment_ 88,360.00
136, 640.00
Interest at 4% — -8/14/47-1/15/48_ 2,306.58
138, 946.58
*276 Less: Adjustments: Taxes — 1st 1/2 1947-1948 paid by Authority 7/1/47-8/13/47_ $611.19
138,335. 39
Award for Trade Fixtures plus int_ 1,016.77
Net to claimant_ 139,352.16

Present at Closing

For Wala Garage, Inc. — Row & Kramer, Attorneys,
By: Charles P. Kramer, I. Milchman
Owners: Samuel Lapin and Max Wasserman
For Port Authority — Miss Meloragno
10. Plaintiff filed a timely application for permission to establish a replacement fund consisting of the proceeds received upon condemnation of its garage property. The Commissioner of Internal Revenue granted permission to establish such a fund in the amount of $130,425.62.
11. In 1949, at a cost of $203,250, plaintiff acquired a parcel of garage property similar and related in service and use to the property condemned by the Port of Authority.
12. On October 15, 1948, plaintiff filed its Federal income tax return for the fiscal year ending July 31,1948. The return reflected a total tax liability of $1,941.83 which was paid in equal installments on October 15, 1948, January 10, 1949, April 15,1949, and August 14,1949.
13. On October 20,1949, plaintiff filed an amended Federal income tax return for the fiscal year ended July 31, 1948. That return reflected a total tax liability of $5,512.24 which sum was $3,570.41 more than the tax liability disclosed by plaintiff’s original return. On October 20, 1949, plaintiff paid additional income tax in the amount of $3,570.41. On this amended return plaintiff declared a capital gain in the amount of $16,146.81, that being the difference between plaintiff’s total award on the condemnation of its garage property ($225,000) less $5,603.19, expenses applicable thereto, and $203,250.00, the cost to plaintiff of replacement property referred to above.
14. In 1949 the Commissioner of Internal Revenue caused an audit to be made of plaintiff’s tax liabilities for the fiscal year ended July 31, 1948. In that audit the Commissioner proposed to treat as long term capital gain the sum of $88,360 which was that part of the condemnation award paid directly *277 to the plaintiff’s mortgagee, the Seamen’s Bank for Savings.
15. In December, 1954, the Commissioner of Internal Revenue assessed a deficiency of $18,536.55 against the plaintiff representing additional income tax for the fiscal year ended July 31, 1948, together with interest thereon of $6,835.92. On January 26, 1955, plaintiff paid these amounts in full.
16. On June 24, 1955, plaintiff filed a claim for refund of tax and interest paid on January 26,1955.
17. On March 9,1946, the Commissioner of Internal Revenue formally rejected plaintiff’s claim for refund.
CONCLUSION OF LAW
Upon the foregoing findings of fact, which are made a part of the judgment herein, the court concludes as a matter of law that plaintiff is entitled to recover with interest thereon as provided by law, and judgment will be entered to that effect. The amount of recovery will be determined pursuant to Rule 38 (c).
In accordance with the opinion of the court and on a memorandum report of the commissioner as to. the amount due thereunder, it was ordered on December 19, 1958, that judgment for the plaintiff be entered for $25,372.47, with interest thereon as provided by law from January 26, 1955.

 (f) Involuntary conversions.
If property (as a result of its destruction in whole or in part, theft or seizure, or an exercise of the power of requisition or' condemnation, or the threat or imminence thereof) is compulsorily or involuntarily converted into property similar or related in service or use to the property so converted, or into money which is forthwith in good faith, under regulations prescribed by the Commissioner with the approval of the Secretary, expended in the acquisition of other property similar or related in service or use to the property so converted, or in the acquisition of control of a corporation owning such other property,, or in the establishment of a replacement fund, no gain shall be recognized, but loss shall be recognized. If any part of the money is not so expended, the gain, if any, shall be recognized to the extent of the money which is not so expended (regardless of whether such money is received in one or more taxable years and regardless of whether or not the money which is not so expended constitutes gain).

 This initial basis was arrived at by adding tbe $90,000 mortgage to tbe $21,415.80 paid by tbe plaintiff.' Thereafter, plaintiff applied an annual depreciation rate of 3 percent on a basis of $74,277.20 wbicb represents tbe value attributed by it to tbe building property as opposed to tbe real property. There is no dispute as to these valuations.

 This represents the total condemnation award of $225,000 less expenses of $6,214.38, leaving a net award of $218,785.62. Prom this figure, tbe adjusted basis of $102,409.67 was subtracted giving plaintiff tbe gain Indicated.

 We note that this position is inconsistent with that taken by the Commissioner of Internal Revenue in Frank W. Babcock, 28 T. C. 781 (1957).

 This figure represents the total award adjusted downward by $5,603.19 for applicable expenses. It varies slightly from the $6,214.38 in expenses which would be deducted were the entire gain to be recognized. See footnote 3. This method of computation is not in dispute.