**WALA GARAGE, Inc.**
v.
**UNITED STATES.**
No. 325–56.

United States Court of Claims.
July 16, 1958.

As Amended Aug. 27, 1958.

Donald J. Marran, New York City, for plaintiff.

George Willi, III, Washington, D. C., with whom was Asst. Atty. Gen. Charles K. Rice, for defendant. James P. Garland, Washington, D. C., was on the brief.

LITTLETON, Judge.

This is a suit to recover taxes paid to the United States. The single question concerns the amount of gain which the taxpayer is required to recognize upon involuntary conversion of his business property under section 112(f) of the Internal Revenue Code of 1939, 26 U.S. C.A. § 112(f).[1]

The facts have been stipulated. Plaintiff, a New York corporation, from the date of its organization in 1943, was principally engaged in the operation of a garage in New York City. Plaintiff acquired its garage property (the property with which the present controversy is concerned) in 1944. The property was then subject to a mortgage indebtedness of $90,000 and plaintiff paid $21,415.80 in cash, thus giving the property a total initial basis of $111,415.80.[2] Plaintiff did not assume the mortgage indebtedness.

In 1948, pursuant to state law, plaintiff's property was condemned and a final award of $225,000 was made therefor. Of this amount $88,360 was paid directly to the mortgagee thereby extinguishing the entire mortgage indebtedness outstanding at the time of the condemnation. The balance of the award $136.640, was paid to the plaintiff. Direct payment to the mortgagee was, under the circumstances, mandatory under state law. The adjusted basis of the property at the time of the award was $102,409.67.

Thereafter plaintiff acquired new garage property, similar to that condemned, at a cost of $203,250.

There is no controversy as to plaintiff's qualifications for relief under section 112 (f) except as to the amount of the relief to which it is entitled. Concededly, plaintiff's property was involuntarily converted into money which was forthwith in good faith expended in the acquisition of other property similar in service to the property so converted. Likewise, both parties agree that, as a result of the condemnation award, plaintiff realized a long-term capital gain of $116,375.95.[3] Neither is there any question

---

1. **"(f)** *Involuntary Conversions.—*

    "If property (as a result of its destruction in whole or in part, theft or seizure, or an exercise of the power of requisition or condemnation, or the threat or imminence thereof) is compulsorily or involuntarily converted into property similiar or related in service or use to the property so converted, or into money which is forthwith in good faith, under regulations prescribed by the Commissioner with the approval of the Secretary, expended in the acquisition of other property similar or related in service or use to the property so converted, or in the acquisition of control of a corporation owning such other property, or in the establishment of a replacement fund, no gain shall be recognized, but loss shall be recognized. * * * If any part of the money is not so expended, the gain, if any, shall be recognized to the extent of the money which is not so expended (regardless of whether such money is received in one or more taxable years and regardless of whether or not the money which is not so expended constitutes gain).

2. This initial basis was arrived at by adding the $90,000 mortgage to the $21,415.-80 paid by the plaintiff. Thereafter, plaintiff applied an annual depreciation rate of 3 percent on a basis of $74,277.-20 which represents the value attributed by it to the building property as opposed to the real property. There is no dispute as to these valuations.

3. This represents the total condemnation award of $225,000 less expenses of $6,-214.38, leaving a net award of $218,785.-62. From this figure, the adjusted basis of $102,409.67 was subtracted giving plaintiff the gain indicated.

that plaintiff expended $203,250 in acquiring its new facilities, nor does the Government contend that these facilities are worth any less than the sum paid therefor. The entire controversy concerns the amount which plaintiff must *recognize* of the gain which admittedly was *realized.*

It is the Government's position that since plaintiff actually received only $136,640 from the condemnation of its property, it is limited to that amount in determining the amount which it "expended" in the acquisition of similar property; that since the mortgage indebtedness was paid directly to the mortgagee, plaintiff could not have, in reality, and therefore cannot be considered to have, "expended" any part of that sum in the acquisition of similar property; that since plaintiff can trace no more than the amount it actually received as its share of the condemnation award into the similar property, the relief provided by section 112(f) is limited to the amount which can be literally traced into the similar property.[4]

Plaintiff does not contend that no part of the gain it realized should be recognized at this time, but it does insist that the amount of recognition should be limited to the difference between the amount it actually expended in the acquisition of its similar facilities and the total amount of the award. In the present case, that difference would be $219,396.-81 [5] less $203,250, equaling $16,146.81. Plaintiff argues that it is only required to recognize this latter sum *at the present time* under § 112(f). We agree.

The decision of the Supreme Court in Crane v. Commissioner, 1947, 331 U.S. 1, 67 S.Ct. 1047, 91 L.Ed. 1301, and that of the Second Circuit in Commissioner of Internal Revenue v. Fortee Properties, 1954, 211 F.2d 915, are of particular significance to the present case.

In Crane, the taxpayer who had acquired property subject to an unassumed mortgage urged that the basis of such property both for purposes of depreciation and computation of gain should be merely the *equity* of the taxpayer therein, that is, the difference between the fair market value of the property and the indebtedness on the property. The Supreme Court rejected this argument and held that the basis of such property was properly the fair market value thereof, including both the taxpayer's equity therein and the amount of the unassumed mortgage. It then went on to hold that, as a logical consequence, where such property is sold, the sum paid to the mortgagee constitutes an "amount received" by the taxpayer for purposes of computing his gain under § 111(b) of the Code.

In Fortee, an argument was made by the taxpayer similar to that made in Crane, but this time under § 112(f) with which we are presently concerned. In the Fortee case, the taxpayer had an equity in his property and the property was subject to an unassumed mortgage. Upon involuntary liquidation of his property the taxpayer received a sum equal to his equity which he forthwith expended in the acquisition of similar facilities, thus postponing recognition of his gain to the extent of the amount so expended pursuant to § 112(f). He then argued that the additional amount of the condemnation award which was paid directly to the mortgagee should not be considered as "received" by him or taxed as gain. The Second Circuit rejected this argument, following Crane, and held that the amount paid to the mortgagee was "received" by the taxpayer and subject to tax as gain to him.

In the present case, the taxpayer has adopted the rules of Crane and Fortee and concedes that the amount

---

4. We note that this position is inconsistent with that taken by the Commissioner of Internal Revenue in Babcock, 1957, 28 T.C. 781.

5. This figure represents the total award adjusted downward by $5,603.19 for applicable expenses. It varies slightly from the $6,214.38 in expenses which would be deducted were the entire gain to be recognized. See footnote 3. This method of computation is not in dispute.

paid directly to the mortgagee is to be considered as "received" by him. He goes one step further, however, and urges that to the extent he actually spends money (derived from a source other than the condemnation award) equal to the sum which is considered "received" by him, then such amount should also be considered "expended" by him in the acquisition of similar facilities within the meaning of § 112(f). We think the taxpayer's argument is a correct, logical and just extension of the Crane and Fortee cases.

As the Tax Court noted in Massillon-Cleveland-Akron Sign Co., 1950, 15 T.C. 79, 83:

> "Section 112(f) is a relief provision, which takes cognizance of the inequity of taxing a gain resulting from the involuntary conversion of property where the proceeds are used to replace the property, and should be liberally construed to effectuate its purpose. Washington Railway & Electric Co., 40 B.T.A. 1249; Davis Regulator Co., 36 B.T.A. 437; Washington Market Co., 25 B.T.A. 576."

Under the Government's theory of the instant case, despite the relief which Congress intended, the taxpayer will have to sustain a substantial burden of taxation though it has not, as a matter of fact, realized any real gain except to the extent that it now has facilities worth less than the amount paid to it for the original facilities. *On that gain*, as we have indicated, plaintiff admits liability for tax.

In the present case, in order to obtain facilities similar to those condemned, the taxpayer was required to expend a sum considerably in excess of the amount it actually received in cash from the condemnation proceedings, *but less than the amount it "received" from those proceedings* for purposes of computing gain under Crane and Fortee. To the extent that a sum equal to the amount so "received" is actually spent in the acquisition of similar facilities it should be considered "expended" within the meaning of § 112(f), for otherwise the relief provisions thereof will be substantially thwarted. There is no merit to the Government's insistence upon a literal tracing of money into the new facilities at least where, as here, there is no question as to the amount actually expended for those new facilities.

The Government seems to think that plaintiff is going to avoid taxation by this transaction. Of course, § 112(f) does not provide for tax avoidance, but it does permit tax postponement and that is all the relief which plaintiff seeks or will obtain in this case. This is accomplished by § 113(a) (9) which provides that, in the present situation, the basis of the new facilities will be that of the old facilities "increased in the amount of gain or decreased in the amount of loss to the taxpayer recognized upon such conversion." Thus, in the present case, the basis of plaintiff's newly acquired property will be that of the condemned property, $102,409.67, less $16,146.81 not expended under § 112(f), plus the amount of the gain which plaintiff is presently recognizing, $16,146.81, or a total of $102,409.67. *This will be the basis even though the property actually cost and, presumably, is worth $203,250.* It is apparent, therefore, that when and if plaintiff voluntarily disposes of his property, he will be taxed upon a gain computed on the same basis as would have been the case had the property not been involuntarily converted. Meanwhile, plaintiff's depreciation deduction is limited to the low base figure. Plaintiff will, therefore, avoid no tax, but merely postpone it until such time as the property is disposed of in the usual way. This is the precise relief accorded by § 112(f).

Accordingly, we hold that plaintiff "expended" $203,250 in the acquisition of similar facilities and is, therefore, presently taxable only on the difference between that figure and the total amount it "received" for the condemned property.

Judgment to this effect will be entered for plaintiff with interest thereon as provided by law with the amount of

recovery to be determined pursuant to Rule 38(c), 28 U.S.C.A.

It is so ordered.

JONES, Chief Judge, and LARAMORE, MADDEN and WHITAKER, Judges, concur.