ETHEL S. AMEY, PETITIONER, *v.* COMMISSIONER OF INTERNAL
REVENUE, RESPONDENT.

Docket No. 40524.    Filed June 30, 1954.

*Maurice D. Dolphin, Esq.*, for the petitioner.
*George E. Grimball, Jr., Esq.*, for the respondent.

758

### OPINION.

ARUNDELL, *Judge:* The petitioner acquired a 50 per cent interest in an apartment hotel, subject to a long-term lease and to two substantial mortgages on the hotel property. Under the terms of that lease, the lessee was to pay cash rentals to the owners of the property and, in addition, to pay the interest and principal amortization required by the holder of the two mortgages.

During the year in question, 1944, the lessee paid $29,385.78 to the Greenwich Savings Bank on account of amortization of the mortgage. The single question to be decided is whether that payment by the lessee to the bank resulted in the receipt of ordinary income by petitioner.

We are of the opinion that under the circumstances here present, the amortization payments must be treated as ordinary income to petitioner in 1944 to the extent of her one-half interest in the hotel.

The United States District Court for the Northern District of Ohio, in the unreported case of *Louis P. Wentz* v. *Frank F. Gentsch*, decided July 29, 1940, held, under similar circumstances, that the amortization payments made by the lessee to the mortgagee were taxable in the year paid as ordinary income to the lessor. The situation in that case differed from that before us in that there the lessee was personally obligated on the mortgage note. The petitioner concedes the correctness of the decision in *Wentz* v. *Gentsch* but asserts that the lack of the lessee's personal obligation in the case at bar requires a different result. We cannot agree.

In *Crane* v. *Commissioner*, 331 U. S. 1, the Supreme Court said:

We are rather concerned with the reality that an owner of property, mortgaged at a figure less than that at which the property will sell, must and will treat the conditions of the mortgage exactly as if they were his personal obligations.

While recognizing the fact that the *Crane* case dealt with a somewhat different question of law, we think the quoted language singularly appropriate to the situation before us. The most cursory reading of the lease negotiated by the executors and trustees of the estate of petitioner's uncle, Thomas Snell, compels the conclusion that they were treating the mortgages as if they were obligations of the estate. If the lease had provided only for the payment of a large cash rental by the lessee to the estate, there could be no question of the taxability of that rental as ordinary income. The executors and trustees would, under those circumstances, have been confronted with the alternative of meeting the mortgage payments themselves or facing foreclosure on the mortgages.

We think it manifest that a lessor may not avoid or even postpone his tax liability by the expedient of requiring the lessee to divert a portion of the rental payments to amortization of mortgages on the leased premises regardless of whether the lessor is or is not personally liable on those mortgages. Cf. *Crane* v. *Commissioner*, *supra*, and *Commissioner* v. *Fortee Properties, Inc.*, (C. A. 2) 211 F. 2d 915, reversing 19 T. C. 99. Property acquired subject to unassumed mortgages could be leased at a nominal cash rental with the bulk of the normal rental going directly to the mortgagee, resulting in periodic increases in the lessor's equity in the property without the payment of tax by the lessor.

There can be little doubt that the parties to the lease considered the amortization payments as a part of the rental. The lease specifically provided that the payments "* * * shall be deemed to be additional rent hereunder, * * *" and that the failure of the lessee to make the amortization payments would create the same rights in the lessor as a default in the cash rental. It is also worth noting that while the amortization payments amounted to $29,385.78 in 1944, petitioner's one-half interest in the cash rental paid in the same year amounted to only $6,967.50. Clearly, the mortgage payments were a very important part of the consideration for the lease. During the year in question, petitioner entered into a mortgage spreader, consolidation, and extension agreement with the lessee and other interested parties wherein the obligation of the lessee to make amortization payments was restated.

There is nothing in the record to indicate that the fair value of the property was not at all times in excess of the amounts owing under the mortgages. This was clearly the case in 1940 at the time of the surrogate's decree, as set forth in the stipulated facts. It is reasonable to assume that if there were no equity in the property during the year before us, the petitioner would have so informed us. Under those circumstances, petitioner was benefited every time the lessee made an amortization payment by a corresponding increase in her equity in the property. Certainly, the bank holding the mortgages was withholding foreclosure proceedings only because of the amortization payments. If the lessee had ceased making the payments, the petitioner would have had to pay them as if they had been her own obligations, notwithstanding the fact that she did not assume the mortgages.

The proposition that payments by a lessee may be taxed as rental income to the lessor even though paid directly to a third party is by no means novel. Where the lessee paid the lessor's taxes as well as cash rentals, the lessor was held to have received rental income to the extent of the taxes so paid. *United States* v. *Boston & M. R. R.*, 279 U. S. 732. As early as 1917 it was held that where a lessee pays divi-

dends directly to the shareholders of a lessor corporation in lieu of cash rentals, those payments are taxable as income of the lessor. *West End St. Ry. Co.* v. *Malley*, 246 F. 625, certiorari denied 246 U. S. 671.

Petitioner's argument on brief is essentially that the amounts attributable to amortization paid to the bank by the lessee should be reflected in adjustments of petitioner's basis if and when the property is disposed of rather than treated as ordinary income. We find no merit in this theory where the amounts in question were actually nothing more than a form of rental payments. It is interesting to note in this case that petitioner is taking depreciation based on the full value of the property and is thus recovering her capital.

Respondent properly included in petitioner's income for 1944 that portion of the amortization payments attributable to her by reason of her 50 per cent ownership of the property in question.

Reviewed by the Court.

*Decision will be entered under Rule 50.*