HAROLD NORMAN, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Norman v. Commissioner
Docket No. 10957-76.
United States Tax Court
T.C. Memo 1978-389; 1978 Tax Ct. Memo LEXIS 127; 37 T.C.M. (CCH) 1585; T.C.M. (RIA) 78389; September 27, 1978, Filed Harold Norman, pro se. Steven I. Klein, for the respondent. SCOTT MEMORANDUM FINDINGS OF FACT AND OPINION SCOTT, Judge: Respondent determined a deficiency in petitioner's income tax for the calendar year 1974 in the amount of $ 2,493.07.Some of the issues raised by the pleadings have been disposed of by the parties, leaving for our decision the following: (1) Whether petitioner is entitled to deduct as an ordinary and necessary business expense or an expense for the production of income the cost of a trip to Puerto Rico and a trip to Buffalo, New York and, if so, the amount of such deduction; (2) whether petitioner incurred entertainment business expenses and, if so, whether, or to what extent, he has met the *128 substantiation requirement of section 274(d), I.R.C. 1954; [1] and (3) the amount, if any, of rent received by petitioner from a property he owned in New York City and a property he owned in Massachusetts, and the proper amount of deductions allowable with respect to those properties, including, with respect to the New York City property the amount, if any, of automobile expenses and, with respect to the Massachusetts property the deductions for interest and taxes. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. Petitioner, who at the time of the filing of his petition in this case resided in Teaneck, New Jersey, filed a joint Federal income tax return for the calendar year 1974 with his wife, Antoinette Norman. Petitioner is a graduate of New York City College with a Bachelor's Degree in Political Science. During the entire year 1974 petitioner was employed as a marketing representative for International Business Machines (IBM). His office was located at No. 2 Broadway. His specific assignment was to visit various departments *129 of large commercial banks, investigate their operation and recommend computer systems for each department. Most of the banks which petitioner visited were located within a relatively short distance from his office at No. 2 Broadway. During 1974 petitioner was considering leaving the employ of IBM and becoming self-employed as a manager of real estate. In March of 1975 he did leave his employment with IBM and go into business for himself. On April 11, 1974, petitioner and his wife flew from Boston to Puerto Rico and returned to Boston on April 14, 1974. The cost of petitioner's flight was $ 163.77. While in Puerto Rico petitioner and his wife occupied a hotel room at a total cost for three nights of $ 103.95. Petitioner rented a car in Puerto Rico for one day (April 13, 1974) at a rental cost of $ 15.35. While in Puerto Rico petitioner drove the car he rented to a place approximately 15 miles from his hotel to look at a piece of real estate. During 1974 petitioner made a one-day trip by plane from New York City to Buffalo, New York. The air fare for this trip was $ 73. While in Buffalo petitioner visited a representative of a bank and discussed the system that bank used *130 for financing property. In 1964 petitioner acquired a house at 359 W. 123rd Street, New York, New York, which at the time was a rooming house. In 1971 petitioner began converting the property into four self-contained apartments, each with its own kitchen and bath. During 1974 some work was still being done on petitioner's property at 359 West 123rd Street. On January 8, 1974, Jesse Shapiro and James, Inc. issued an invoice to petitioner listing his work and home telephone numbers with the work description as "Repair" and the notation "check No. 2 window" and showing a deposit of $ 21. The address was given as "359 W. 123, Apt. 3, Mrs. Rolle, phone 222-4078." On March 6, 1974, an invoice was issued by Herman's Service Co., "C.O.D. Sales and Service," and on this appeared "Mrs. Ridet, 359 W. 127 St., 222-4078, Top Floor." The description of the work on this invoice was to install a lock and the total amount of the invoice was $ 27.40.
In addition to amounts respondent agreed to be allowable expense deductions on the property at 359 West 123rd Street, petitioner made expenditures on the dates, for the purposes and in the amounts indicated: Date
Description
Amount
Jan. 10, 1974
Paint materials
$ 76.05
Mar. 2, 1974
"TR 177"
1.89
Apr. 10, 1974
Electrical work
10.88
June 22, 1974
Repair sink in bath,
patch and plaster all
existing holes and paint
60.00
Sept. 12, 1974
Sealer
12.58
Sept. 25, 1974
"Lloyd Jones"
25.00
Nov. 22, 1974
Window seal - Apt. 2
West wall - Apt. 1
20.00
Dec. 6 & 7, 1974
Miscellaneous items
8.60
*131 During the year 1974 it was necessary for petitioner to visit his property at 359 West 123rd Street in connection with arranging for work on the property, taking supplies to the property or talking with or supervising workmen at the location. Generally petitioner, if he could arrange to do so, would go to visit the property on a weekend when he was not at his full-time employment at IBM. When petitioner went to the property on a weekend he would drive his automobile from New Jersey to the property and would have certain tolls to pay in making the trip. The New York City property was between 10 and 15 miles from petitioner's home in New Jersey. On some occasions when petitioner was required to visit his New York City property he would go to the property during the week on his lunch hour via subway. Petitioner expended at the places and on the dates indicated the amounts set forth in the following schedule: Place
Date
Amount
The Moonraker
Jan. 4, 1974
$ 15.23
Playboy Club
Jan. 23, 1974
20.92
The Moonraker
Feb. 2, 1974
16.22
Playboy Club
Mar. 15, 1974
29.00
Playboy Club
Mar. 16, 1974
42.00
The Moonraker
Mar. 23, 1974
12.92
The Moonraker
July 29, 1974
15.13
Playboy Club
Dec. 27, 1974
35.65
*132 On March 14, 1974, petitioner drew a check to the Playboy Club for $ 116.03 and on September 3, 1974, drew a check to that club for $ 117.59.
Petitioner's Federal income tax return for the calendar year 1974 was prepared by an employee of H and R Block. Attached as a part of the return was a statement on a form showing in the upper lefthand corner "H&R Block" which was entitled "Statement of Rental Income." This statement showed the following: Location of Property
359 W. 123
230 Fawcett
NYC
Mass.
Gross Income
$ 3,600
$ 2,112
$ 5,712
Total Depreciation Expense
2,026
880
$ 2,906
Other Expenses
169
116
Painting
822
Plumbing
251
Legal Services
955
91
1,046
Super
240
Water
63
Heat
504
Electricity
198
Interest
1,331
1,005
Taxes
602
816
Insurance
160
132
Pest Control
68
Advertising
25
Auto Travel (9,000 miles total)
600
750
Tolls, Parking
60
45
Total Other Expenses
$ 5,374
$ 3,629
$ 9,003
On another form attached to the return, showing in the upper lefthand corner "H&R Block" and entitled "Statement of Auto, Travel and Sales Expenses," the following *133 appeared: (1) Travel expense of $ 241, consisting of plane fares of $ 168 and $ 73.
(2) Sales expense (lunches, dinners, etc.) of $ 206. (3) Explanation of deduction - Husband must use car in the course of business. Fully reimb. Other "out of pocket" expenses not reimb. Office at home - file. 2 trips to consider investment property. Petitioner, in computing his taxable income, reduced the income reported from his salary by $ 6,197 which was the amount of loss reported on Schedule E, Part II, of his tax return and explained on the statement of rental income attached to that return. Respondent on November 10, 1976, issued to petitioner the deficiency notice from which the appeal in this case is taken. Under date of June 15, 1977, petitioner wrote a letter to a representative of respondent's Appellate Branch in Newark, New Jersey, the body of which is as follows: This is to inform you that since gross errors were made in my 1974 tax return I desire in this audit to make amendments. The following changes will be made. (1) On the Hyannis Mass. property. I did not receive income from such property and therefore will not deduct any expenses. The only relevant *134 factors therefore will be the interest and taxes on the property, and nothing more will be produced in evidence. (2) There was no income from 123rd St. property. There was no heat or hot water supplied or deduction claimed on tax return. Petitioner, during the year 1974, paid $ 418.84 real estate tax and $ 53.77 district tax, plus a $ 1 demand charge and $ 18.92 interest, making a total of $ 492.53, to The Commonwealth of Massachusetts, Town of Barnstable, with respect to the 230 Fawcett Lane, Hyannis property. He also paid to The Commonwealth of Massachusetts, Town of Barnstable, personal property tax of $ 84.36 and district personal property tax of $ 10.83, making a total of $ 95.19. Petitioner, during 1974, paid to the Hyannis Cooperative Bank $ 921 interest on a mortgage on property described as "L 69 Fawcet Lane Hyannis," which was the property at 230 Fawcett Lane, Hyannis. The property at 230 Fawcett Lane, Hyannis, Massachusetts was owned by petitioner during the entire year 1974. Respondent in his notice of deficiency disallowed all of the expenses claimed by petitioner to be deductible with respect to the property at 359 W. 123rd Street, New York City, and the property *135 at 230 Fawcett Lane, Hyannis, Massachusetts. By stipulation, petitioner and respondent agreed to the deductions to which petitioner was entitled with respect to the 359 W. 123rd Street property for depreciation, plumbing, interest, taxes and insurance. They further stipulated that petitioner was entitled to no deduction for advertising and pest control. In addition, respondent conceded that petitioner was entitled to deduct $ 50 as painting expenses and $ 155.21 as other expenses which were specified by attaching bills and checks. Respondent also disallowed the $ 241 claimed by petitioner as deductible plane fares for travel to Puerto Rico and Buffalo and disallowed the $ 206 claimed by petitioner to be deductible as entertainment expenses. OPINION The issues here are purely factual. Each one of these issues involves questions of the credibility of petitioner as a witness. In general, we did not consider petitioner's testimony to be credible because of the shift in position he took not only between the items reported on his return but also in his oral testimony at the trial with respect to specific items. At the trial petitioner testified that he received no rental income *136 from either the property at 359 W. 123rd Street or at 230 Fawcett Lane during the year 1974. In explanation of why income from these properties was reported on his return petitioner testified that the person preparing his return had suggested to him that because of the large expense deduction he was paying it would be better to show a "token income" on the properties so that the expense deduction would not be as likely to be questioned. He testified that at the time he knew he had no income from the properties but had gone along with the suggestion since it seemed reasonable to him. Petitioner is an educated, intelligent man with a responsible position with a large corporation. He should understand the meaning of the words "under penalty of perjury." Petitioner's attempted explanation as to why he would sign a return stating "under penalty of perjury" that the return and the schedules attached were accurate to the best of his knowledge and belief when he knew the returns were incorrect was totally unsatisfactory to the Court. The preparer of the return was not called as a witness.There would be no logical reason why a return preparer working as an employee would suggest to a taxpayer *137 that he make a false return. We do not believe petitioner's testimony that the preparer of his return suggested that he include some rental income if in fact petitioner had no such income. Petitioner testified at the trial that he never used his automobile in connection with his work at IBM, but on his return stated that he "* * * must use car in the course of business. Fully reimb." There is other testimony by petitioner which is in conflict with statements he made to the Internal Revenue Service Appellate conferee. We therefore put little weight on petitioner's testimony. As will be more fully hereinafter discussed, there is documentary evidence in the record that persuades us to conclude that petitioner did receive rental income from the property at 359 W.123rd Street and received rental income from the Hyannis property in 1974 by way of mortgage payments made for that property by his sister and mother. We also conclude that the major portion of the deductions disallowed by respondent and not agreed to or conceded at the trial are not proper deductions. Nevertheless, from the evidence as a whole we have concluded that certain additional amounts are properly deductible.
*138 1. Travel Expenses to Puerto Ricoand Buffalo.
From the evidence as a whole we conclude that the primary reason petitioner took the trip to Puerto Rico was personal and his investigation of property there was purely incidental. Petitioner's vague testimony that he looked at some property in Puerto Rico at best accounted for only a small portion of the time he and his wife spent in Puerto Rico. We therefore conclude that this trip was not primarily for any business purpose. Petitioner's testimony with respect to the trip to Buffalo is vague. Petitioner claimed the deduction on the return as a trip to investigate investment property, but testified at the trial that the reason for the trip was to consult with a banker with respect to financing property. Petitioner gave no testimony at the trial of any specific properties that he looked at in Buffalo. Petitioner did not show why it was necessary for him to go to Buffalo to obtain information with respect to a bank's financing practices rather than obtaining the information by correspondence or telephone. We therefore conclude that petitioner has failed to show that the trip to Buffalo was in connection with any business *139 activity. However, if the trips to Puerto Rico and Buffalo had been to some extent for the purpose of looking at investment property or obtaining information with respect to financing, the expenses incurred on these trips would not be deductible. Petitioner's statement was that he was considering leaving IBM and going into some form of real estate management business for himself and that he made the trips to Puerto Rico and Buffalo to investigate possibilities in connection with his plan. The expense of a trip to investigate a possible plan of going into a business is not ordinarily deductible. Frank v. Commissioner,20 T.C. 511 (1953). Even had the trips been in connection with some definite plan, which petitioner did not show them to be, the expenses would be capital and not deductible expenses in 1974. See Dean v. Commissioner,56 T.C. 895, 902-903 (1971); Westervelt v. Commissioner,8 T.C. 1248, 1254-55 (1947). We therefore hold that petitioner is not entitled to a deduction in 1974 for any of the costs of his trips to Puerto Rico and Buffalo. 2. Entertainment Expenses.
Petitioner produced at the trial the few receipts *140 we have listed in our findings for expenditures at restaurants and clubs in the New Jersey area. As best we can determine from petitioner's testimony, no notations of the purpose of the entertainment were placed on the receipts in most instances at the time or shortly after the time of the expenditure. These notations were generally placed on the receipt at a later date. Therefore it is clear that petitioner has not complied with the requirements of section 274(d) which is necessary for an entertainment expense to be deductible. However, again, even had petitioner met the requirements of section 274(d) the claimed expenses would not have been shown to be deductible business expenses in 1974 since in each instance the notations subsequently made and to which petitioner testified were claimed expenses with respect to investigating going into some form of real estate business for himself at a later date when he left his position at IBM. See Dean v. Commissioner,supra;Westervelt v. Commissioner,supra. Apparently, if petitioner's testimony with respect to these receipts was to be acceptable as credible, and we do not consider his testimony *141 as credible, the claimed deductions were for entertaining personal friends of his who were either attorneys or in the banking business to attempt to get ideas from them with respect to forming a business of his own at some later date. The record is totally insufficient to show that the major purpose of the entertainment was business-oriented rather than the entertainment of personal friends. We sustain respondent's disallowance of petitioner's claimed deduction for entertainment expenses. 3. Income and Expenses of Property.
Although petitioner testified at the trial that he received no income from the property at 359 W. 123rd Street, there is indication in the record, aside from his statement on the return, that there were tenants on this property in 1974. One bill which is in support of the items conceded by respondent and represented by petitioner to be deductible with respect to the property clearly indicated that someone was living in Apartment 3 in the building in January 1974. Another invoice in June 1974 when considered in conjunction with the January invoice is a further indication that at least this apartment was occupied by a tenant during 1974. Petitioner *142 argues that the fact that he claimed no water and heat expense for this New York City property is proof that he had no tenants. In our view this is no proof since it may well be that tenants paid their own heat and water bills or even that petitioner had some arrangement for an advance or later payment of these bills. Furthermore, if, as petitioner argues, he was still engaged in making a complete renovation of this property in 1974 to change it from a rooming house property to four separate apartments, all the amounts he expended in 1974 would have been incurred as a part of a plan to adapt the property to a new use and therefore should be capitalized rather than deducted as current expenses. See Cowell v. Commissioner,18 B.T.A. 997 (1930); Stoeltzing v. Commissioner,266 F.2d 374 (3d Cir. 1959), affg. a Memorandum Opinion of this Court; United States v. Wehrli,400 F.2d 686 (10th Cir. 1968). Considering the record as a whole we conclude that petitioner did have rental income from the property at 359 W. 123rd Street in 1974. Because petitioner has shown no different amount of rental income, we accept the $ 3,600 income reported *143 by him on his tax return which was not changed by respondent in the notice of deficiency.However, on the basis of this record we conclude that petitioner had some deductible expenses other than those agreed to by respondent at the trial. Although the receipts received in evidence for expenditures for materials for labor which we have listed in our findings were not specifically marked as being for the property on West 123rd Street in New York City, in our view there are clear indications in the record that these items were expended on the West 123rd Street property. Certain of the items have notations of apartment numbers on them and others seem sufficiently connected with the type of general repair work that petitioner was having done on the property to be items expended on that property. The items we have listed as expended on the West 123rd Street property in 1974 total $ 215. We therefore hold that petitioner is entitled to deduct $ 215 of repair expenses on this property in addition to the amounts to which respondent has agreed. Also, in our view petitioner has shown that it was necessary that he visit the New York City property occasionally and that he did generally visit *144 the property on weekends.The record is not clear as to the distance to and from the property or how often petitioner visited it. However, on the basis of the record as a whole and weighing heavily against petitioner, we have concluded that he drove approximately 600 miles in visiting the property in 1974 and spent tolls of approximately $ 25 on his trips to visit the property. We therefore conclude that petitioner is entitled to a deduction for automobile expense in connection with the management of his New York City property of $ 115. At the trial and on brief petitioner contended that he paid a bill of $ 722.25 to Tru-Mar Pioneer, Inc. in 1974 for painting done on his property at West 123rd Street. In support of his contention petitioner produced a typewritten document dated January 22, 1974. This document appears to be a typed summary of work done and carries a typed statement "Paid in full" and "PAID." Clearly the document is a summary of individual items. The document itself is suspicious. In addition, an employee of respondent testified that at a conference held with petitioner he produced checks to Tru-Mar dated in late 1973 totaling $ 722.25. Respondent issued a subpoena *145 for these checks to petitioner.Petitioner did not produce any 1973 checks and testified that he could not find his 1973 checks. The records of Tru-Mar were not produced or accounted for. Simply stated, we do not believe petitioner's testimony that he paid the $ 722.25 to Tru-Mar in 1974. At the trial petitioner testified that the Hyannis property was used for personal purposes only in 1974 by him and his family. There are many indications in the record that petitioner's mother and sister occupied the Hyannis property at least at some time during 1974. Petitioner testified that they did not actually live at the property in 1974. Whether they occupied the property only occasionally or on a continuing basis, the decision we need to make is whether petitioner received any rental payments from them in 1974. Respondent does not argue that anybody other than petitioner's mother and sister lived in the Hyannis property in 1974. He contends that petitioner's mother and sister made the mortgage payments for petitioner on the Hyannis property and that this was equivalent to their paying rent. See Amey v. Commissioner,22 T.C. 756 (1954). There are some indications *146 in the record that at least some of the mortgage payments were made by petitioner's mother. The record would be clearer as to who made the mortgage payments on the Hyannis property had petitioner produced checks or money orders drawn for the mortgage payments. Petitioner claims that he made the mortgage payments in cash. He testified that he drove up to Hyannis to make the cash mortgage payments.Petitioner had a bank account and paid bills by check from this account. We do not believe petitioner's testimony that once every month he drove to Hyannis, Massachusetts and made the mortgage payments on the 230 Fawcett Lane property in cash.He may have made some mortgage payments in cash if he happened to be in Hyannis when the payment became due. As respondent points out in his brief, April 14, 1974, when petitioner returned from Puerto Rico to Boston, was Easter Sunday. One of the mortgage payment statements is stamped as paid on April 17, 1974. We do not believe petitioner returned to Hyannis on Wednesday and made this mortgage payment in cash. Another of the statements is stamped paid "October 15, 1974," a Tuesday. Petitioner testified that he made every effort not take a day *147 at a time off from his work at IBM in 1974 and, if possible, when he had personal business to transact did it on a Monday or Friday to take advantage of the weeekend. The mortgage statements received in evidence do indicate all mortgage payments were made in 1974.As heretofore pointed out, some bear a stamp "Paid" with a date indicating that the payment may have been a cash payment. On the statement paid April 17, 1974, by the "Paid" stamp is "LC 1.41" indicating a late charge of $ 1.41. We do not believe that petitioner made the payments in cash. From the receipts which are in evidence it appears that the mortgage payments, including principal, interest and an escrow for taxes and interest, were $ 179.65 a month or a total of $ 2,155.80 for the year. This compares to the $ 2,112 petitioner reported as rental payments on this property on his return. As petitioner has pointed out, he is entitled to a deduction for the interest payment on the mortgage as an interest expense and the taxes paid as a deduction for taxes paid whether or not the property was rental property. As we have found in the facts, petitioner paid interest on the property of $ 921 and real and personal property *148 taxes of $ 587.72 in 1974. At the trial some question arose as to whether the $ 53.77 district tax might not be a special assessment, but on review of the tax receipts we conclude, because of there being a separate space for placing special assessment taxes, that the district tax was a deductible tax probably referring to the school district. The $ 18.92 of interest paid with respect to these taxes would also be deductible as interest whether or not the property was business property, but the $ 1 demand charge would appear to be deductible only if the property were business property. The total amount which petitioner would be entitled to deduct with respect to this property if it were not business property is $ 1,567.64. Obviously, if the property were business rental property there would be some other items such as depreciation, utilities to the extent paid by petitioner, and insurance which would be properly deductible.Respondent, however, in the notice of deficiency disallowed all deductions claimed by petitioner with respect to the property.Using our best judgment under the circumstances, we conclude that some mortgage payments were made by petitioner's mother or sister as *149 rental payments for the use of the Hyannis property in 1974 and that these payments did not exceed the amount of deductible expenses with respect to the property, including taxes and interest payments and any other items which might be properly deductible. In other words, we conclude that petitioner had no net income or loss and no separate deductions for taxes and interest with respect to the Hyannis property. Decision will be entered under Rule 155. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise stated.↩